UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In re:  Chapter 11
Case No. 08-11636-MWV

**LEISURE TIME WAREHOUSE, INC.,**

**Debtor**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TRUSTEE'S OBJECTION TO DEBTOR'S
### FIRST AMENDED DISCLOSURE STATEMENT DATED AUGUST 14, 2009

*NOW COMES* Michael S. Askenaizer, Chapter 11 Trustee in the above-captioned matter, by and through his attorneys Ford & Weaver, P.A., and objects to the Debtor's First Amended Disclosure Statement Dated August 14, 2009 as follows:

1.  The above-captioned Disclosure Statement (the "Debtor's Disclosure Statement") does not contain adequate information as required by 11 U.S.C §1125(b). The details of that objection are contained in the following paragraphs.

2.  The Disclosure Statement is inconsistent about whether the Debtor will continue to exist. Page 2 of the Disclosure Statement contains the following quote: "Following confirmation, the Debtor will continue to operate and lease its retail business at 75 LaFayette Road, Hampton, New Hampshire…" At page 12, the Disclosure Statement says: "The entry of the Confirmation Order will constitute the resolution or resolutions necessary for the Trustee to dissolve the corporation at the conclusion of this bankruptcy case. Under the reorganization plan, the Debtor will be dissolved by the Trustee."

3.  The Debtor cannot be both dissolved and continue to lease and operate its retail business.

1

4.      The Plan and the Disclosure Statement appear to contemplate that the Trustee will pursue certain causes of action.  Neither the Plan nor the Disclosure Statement discloses to the Trustee or to any other party-in-interest whether and how the Trustee would be paid for such ongoing activity, whether and how the Trustee would be able to fund the employment of attorneys for such ongoing activity, whether and how the Trustee would be required to file tax returns for such ongoing activity and whether and how the Trustee would be able to fund accountants or any other professionals required for the post-confirmation efforts that the Plan anticipates from him.

5.      The Disclosure Statement fails adequately to disclose the range of likely dividends to unsecured creditors. The nearest that the Disclosure Statement comes to suggesting a dividend that unsecured creditors could expect to receive is at page 13, where the Disclosure Statement says that "General Unsecured creditors will see periodic dividends projected to be 50% of the allowed claims in that class."  However, there appears to the Trustee to be no basis for that computation, and it appears to be inconsistent with the statement describing the treatments of the various classes contained at pages 5 through 7 of the Disclosure Statement.

6.      The Disclosure Statement contains no disclosure as to what future events might trigger subsequent dividends, nor does the Disclosure Statement contain any disclosure describing what the likely time period might be for such "periodic dividends."

7.      The Disclosure Statement contains inadequate disclosures with respect to the Chapter 5 causes of action.  The Statement of Financial Affairs indicates that some $200,000 was paid to Lisa Chase within the one year prior to the bankruptcy case.  In addition, the Trustee's review of certain bank statements indicates that there have been post-petition payments that were

unauthorized and pre-petition payments that are either fraudulent transfers or preferences, which the Trustee believes he might recover, the total of which amounts to in excess of $100,000.

8. The disclosure Statement fails to adequate disclose to creditors the value of the provisions of the Plan of Reorganization which "constituted discharge, release or relinquishment of those claims despite the fact that they might have merit" *quoting* Disclosure Statement at page 13.

9. Exhibit C (the "Class Schedule") fails to take into account the proofs of claim that have been filed. By failing to take into account the proofs of claim that have been filed, the Class Schedule is misleading. The Class Schedule is further misleading because it suggests that Dimension Industries will have an unsecured claim equal to $40,000.00, and a secured claim equal to zero despite the fact that Schedule D (the "Inventory of the Debtor's Assets") appears to include the assets on which Dimension Industries has an attachment, and further, it appears to affix a material value to the Dimension Industries' assets. The Dimension Industries' attachment has reached primarily "bars, bar stools, poker tables…" which the Debtor values at $18,000 wholesale, and also the Dimension Industries' attachment reaches pool tables, which the Debtor has valued at approximately $12,000 wholesale. It may be that Dimension Industries does not have all of the pool tables or that Dimension Industries does not have all of the bars and bar stools, etc., however, it has been claimed by Mr. Chase that Dimension Industries does have a significant portion of those categories of items, and that the secured claim of Dimension Industries therefore has some value.

10. The unsecured claim of Dimension Industries is plainly in excess of $40,000.00. The claim asserted by Dimension Industries in the state court litigation is $190,000.00. The amount that the judge said Dimension Industries was reasonably likely to obtain was

$120,000.00. The Trustee is unaware of any negotiations with Dimension Industries which might result in the resolution of their claim by allowing them an unsecured claim in the amount of $40,000.00.

11. The Class Schedule is further misleading in that it asserts Custom Plastics' claim is in a maximum amount of $26,000, and has been settled. Custom Plastics filed a proof of claim (Claim No. 2) asserting a claim in the amount of $196,203.90. The assertion on the Class Schedule that the maximum amount of the claim of Custom Plastics might be $26,000 is, at best, misleading.

12. Attached to the Disclosure Statement as Exhibit D is the Debtor's assertion as to the inventory as of July 15, 2009. Exhibit D is, at best, misleading. It is misleading because it makes no sense. For example, the Debtor asserts that it has "bars, bar stools, poker tables, spectator chairs" with a value on June 30, 2009 of $31,400.00, and that the Debtor had 141 such items. The Debtor asserts that it has subsequently sold 2 leaving on hand, 139 such items with a cost per item of $222.70. The bars to which the Debtor refers are units which are massive, and are sold for $10,000-plus. The bars did not cost $222.70. Poker tables, bars, spectator chairs and bar stools have various process and various costs. It is misleading to lump all of these items together into one "item" and then say that they each cost $222.70. That is simply false.

13. As a further example, the Debtor has an item "fire places, woodstoves, gas stoves, pellet stoves," indicating with respect thereto that the Debtor has 17 of those items on hand and that each such item costs $1,166.67. Of course, it did not. The fireplaces have a different cost than wood stoves. Wood stoves have a different cost depending upon the brand and the model. Gas stoves cost an amount different from wood stoves, and pellet stoves have a cost which is different from any of the other three. Each of them has a cost which varies depending upon the

make, the model and applicable shipping costs. It is misleading to assert that each of those items costs $1,166.67.

14. As a further example, "grill accessories" are said to have a value of $4,300.00 as of June 1, 2009, and that each grill accessory costs $17.99. Of course, grill accessories can be different items. A grill accessory might be a set of utensils for use on a grill, or a grill accessory might be a single spatula. The two items do not have the same cost.

15. As a further example, the Debtor indicates that the Debtor has "teak furniture" to a value as of June 1, 2009 of $19,120.00, 96 of which were on hand and that they each cost $199.17.

16. Of course, a teak loveseat has a cost different from a teak table. A teak chair has a different cost from either of the other two items. A teak umbrella may have yet a fourth cost. It is inaccurate and misleading to assert that each piece of furniture costs $199.17.

17. On Exhibit D, the Debtor appears to have a deduction of $67,390.00 for "Keslie." The basis for that deduction is unknown to the Trustee and certainly not made apparent on the Disclosure Statement. As of June 1, 2009, it was the Trustee's understanding that the Debtor's employees had conducted (as they claimed) a physical inventory: they counted the pieces. They did not count the pieces that Mr. Kesseli had taken because the pieces that Mr. Kesseli had taken were not there. So to include a deduction for Kesseli is misleading without further explanation.

18. The Disclosure Statement at page 6 indicates that "the Debtor will pay Administrative Creditors holding allowed claims in this class in full from the funds on deposit in the Pot." It is not clear to the Trustee how it is that he Debtor is paying those funds if the Trustee is the one holding and administering the Pot. Irrespective of who holds the money and who

makes the payment, the Trustee anticipates that there are insufficient funds on hand in this estate to satisfy the administrative claims in full on the Effective Date.

19. The Disclosure Statement at pages 5 and 6 in Section II B 3 deals with a Chapter 7 Administrative Expense Class. There is no such class. All of the administrative expenses in this estate are Chapter 11 expenses.

20. At page 6, Section II B 6, the Disclosure Statement says "Under the reorganization plan, the allowed claim in this class will be allowed in the amount claimed by the IRS and paid in full to the extent possible from the funds remaining on deposit in the Pot after the dividends due Class Three, Four and Five creditors…" Paragraph 6 deals with the Class 6 creditors. Class 6 is the unsecured class. The reference to the IRS makes no sense whatsoever.

21. The Disclosure statement, at page 8 Section III E 2 states that "only creditors holding allowed administrative claims will be eligible to receive dividends under the Plan." That makes no sense. Priority claims should be paid. Unsecured claims are eligible to receive dividends, secured claims are eligible to receive dividends, equity is eligible to receive a dividend, all under the Pot. That sentence makes no sense.

22. The Disclosure Statement at page 8 Section III E 3 indicates that Article 2 of this Disclosure Statement provides a projection of the amounts to be paid to each allowed creditor and the terms of payment. It, however, does not.

23. At page 10, Section III H 2, the Disclosure Statement indicates that the Trustee will pay Custom Plastics the sum of $15,000. The Disclosure Statement fails to say when. The Disclosure Statement fails to state from what funds. The Disclosure Statement fails to say under which priority Custom Plastics gets its money.

24. In Section III H 3, the Disclosure Statement appears to assert that the Trustee will retain and prosecute the judgment (or settle) the Kesseli adversary proceeding "and any defamation or false light claim held by the Debtor as a result of the defamatory letter circulated…" The Disclosure Statement fails to disclose a value for that claim. The Disclosure Statement fails to disclose the expenses associated with that claim. The Disclosure Statement fails to disclose how it is that the Trustee will fund the expenses associated with commencing that litigation.

25. At Section VI, page 13 the Disclosure Statement indicates that "The Reorganization Plan provides for the payment of its dividend to Convenience Creditors in cash on the Effective Date." The forgoing statement is inconsistent with the Pot description contained in Section II. Further, Section II describes no Convenience Class of creditors.

26. Finally, the Disclosure Statement describes no source of funds for that payment.

WHEREFORE, Trustee respectfully requests that this Honorable Court order and decree as follows:

    A. That the Disclosure Statement not be approved; and

    B. For such other and further relief as may be just and equitable.

Respectfully submitted,
MICHAEL S. ASKENAIZER, TRUSTEE
By his Attorneys,
FORD & WEAVER, P.A.

Dated: September 14, 2009      By:     /s/ *Edmond J. Ford*
Edmond J. Ford (BNH 01217)
10 Pleasant Street, Suite 400
Portsmouth, NH 03801
Telephone: 603-433-2002
Facsimile: 603-433-2122

**CERTIFICATE OF SERVICE**

       I hereby certify that on September 11, 2009 a copy of the foregoing has been forwarded electronically and/or via U.S. First Class Mail to the following parties:

**1197 Union Avenue Associates**
c/o Steven R. Whalley, Managing Partner
1197 Union Avenue
Laconia, NH 03246

**Michael S. Askenaizer, Trustee**
Law Offices of Michael S. Askenaizer
29 Factory Street
Nashua, NH 03060

**BTB Associates, LLC**
37365 Pettinaro Drive
Oceanview, DE 19970

**Charles W. Grau**
Upton & Hatfield
10 Centre Street - P.O. Box 1090
Concord, NH 03302-1090

**Joshua E. Menard**
Preti Flaherty
57 North Main Street
PO Box 1318
Concord, NH 03302

**John M. Sullivan**
Preti Flaherty PLLC
57 North Main Street
P.O. Box 1318
Concord, NH 03302-1318

**William F. Martin, Jr.**
Eno, Boulay, Martin & Donahue, LLP
21 George Street
Lowell, MA 01852

**Christine W. Casa**
Boynton, Waldron, Doleac et al
P.O. Box 418 - 82 Court Street
Portsmouth, NH 03802-0418

**Daniel R. Hartley**
Casassa & Ryan
459 Lafayette Road
Hampton, NH 03842

**Steven M. Notinger**
Donchess, Notinger & Tamposi, PC
547 Amherst Street, Ste. 204
Nashua, NH 03063

**Peter N. Tamposi**
Donchess, Notinger & Tamposi, PC
547 Amherst Street, Ste. 204
Nashua, NH 03062

**Law Office of Mary Koehan Ganz**
P.O. Box 238
779 Lafayette Road
Seabrook, NH 03874-0238

**William S. Gannon**
889 Elm Street, 4th Floor
Manchester, NH 03101

**Lewis Butler and Priest, Butler & Co.**
PO Box 6510
Portsmouth, NH 03802

**R. Carl Anderson**
Sulloway & Hollis
P.O. Box 1256
Concord, NH 03302-1256

**Geraldine Karonis**
Office of U.S. Trustee
1000 Elm Street - Suite 605
Manchester, NH 03101


                                                       */s/ Edmond J. Ford*

                                                       Edmond J. Ford

f:\wpdata\ed\1808-038\pleadings\obj to disclsoure statement dated 8 14 09.rtf